[Crim. No. 4104. Second Dist., Div. Two. June 13, 1947.]

THE PEOPLE, Respondent, v. GEORGE DEAN HARPER, Appellant.

Alexander L. Oster for Appellant.

Fred N. Howser, Attorney General, and Ward Sullivan, Deputy Attorney General, for Respondent.

McCOMB, J.—Defendant was charged with having committed a robbery while armed with a deadly weapon. Upon arraignment he entered pleas of (1) not guilty and (2) not

guilty by reason of insanity. Thereafter by leave of court he withdrew his plea of not guilty, was rearraigned and pleaded guilty as charged in the information. The issue of not guilty by reason of insanity was later tried before a jury which was unable to agree and a mistrial was declared. Upon a second trial the jury found defendant sane at the time of the commission of the offense to which he had pleaded guilty. Judgment and sentence were duly pronounced and defendant has appealed.

Defendant relies for reversal of the judgment on two propositions which will be stated and answered hereunder consecutively:

First: *That the evidence does not establish that defendant was sane at the time of the commission of the offense to which he had pleaded guilty for the reason that Doctor Marcus Crahan and Doctor Victor Parkin, duly qualified experts, in giving their opinion that defendant was sane at the time of the commission of the criminal offenses did not take into consideration the fact that defendant had been confined, while he was in the Navy, in a hospital because he was suffering from dementia praecox; and also that they did not take into consideration the records of the United States Public Health Service Hospital which reflected that defendant had also been confined in such hospital suffering from dementia praecox.*

This proposition is devoid of merit. Both Dr. Crahan[1] and

---

[1] On page 115 et seq., of the reporter's transcript appears the following testimony given by Doctor Crahan:

"Q. Did you ask him anything about his previous illnesses or injuries? A. Yes.

"Q. What did he say in that regard? A. He said that he had had measels, chickenpox, whooping cough, influenza, mumps, and he had an appendectomy at Mare Island; had his tonsils removed at the age of nine; while in Kiska, Alaska, he had a piece of shrapnel removed from his neck. He denied other illnesses, injuries or surgery. He said that he was in a locked mental ward in three hospitals for a total of six months in 1944, and he had no family member who had ever been mentally committed.

"Q. Now, when he told you that he had been in three mental wards— had been locked in a mental ward in three hospitals for a total of six months, did you ask him what the nature of his illness was? A. Yes.

"Q. What did he say? A. He said that that resulted in his discharge from the Navy; that he was discharged from the Navy on the basis of malaria and dementia praecox.

"Q. Now, when you formed your opinion as to the defendant's sanity, did you take into consideration the fact that he was in a hospital with the illness of dementia praecox? A. That he might have been, yes.

"Q. You took that fact into consideration? A. Yes."

Dr. Parkin[2] testified that in forming their opinion they had taken into consideration the previous confinement of defendant in hospitals because he was suffering from dementia praecox.

■ Second: *That the trial court committed prejudicial error in permitting the prosecution to open and close the trial.*

This contention is likewise untenable, for the reason that defendant through his counsel expressly waived any objection which he might have had to the People's opening and closing the trial.[3]

In view of the fact that the record is free of error the judgment is affirmed.

Moore, P. J., and Wilson, J., concurred.

---

[2]On page 132 et seq., of the reporter's transcript appears the testimony of Doctor Parkin as follows:

"Q. Did you ask him anything about his previous illness? A. Yes, I did.

"Q. What did you learn in that regard? A. He told me he had had malaria; he had been hospitalized in Mare Island and later at Imola, the Navy Annex to Mare Island.

"Q. Didn't he tell you he was at the U. S. Public Health Service Hospital at Fort Worth, Texas? A. Yes.

"Q. Suffering from dementia praecox? A. He said he was at Fort Worth and he was discharged from there suffering from dementia praecox.

"Q. Didn't he tell you he was at a hospital in Fort Worth, the U. S. Public Health Service Hospital? A. I don't know that he mentioned that. I haven't got that here.

"Q. Did he tell you he was discharged from a hospital, and that he had been suffering from dementia praecox? A. That is what he said, yes.

"Q. In forming your opinion as to his sanity or insanity, did you take into consideration the fact that he was at Fort Worth, Texas, in a hospital suffering from dementia praecox? . . . A. I did."

[3]After the jury had been empaneled and defendant with the court's permission had called a doctor who was examined and cross-examined, there occurred the following colloquy between the deputy district attorney, defendant's counsel, Mr. Oster, and the court:

"MR. ALEXANDER: I thought I was to offer the People's case, if your Honor please.

"MR. OSTER: I have no objection.

"THE COURT: I am perfectly willing to accommodate these doctors.

"MR. OSTER: It is perfectly agreeable to me, your Honor. I did not want to see them have to sit around here two or three days unnecessarily."